UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

*In re*:

SPARHAWK LLC, *et al.*,[1]                 Case No.:  26-10527-11
                                                          Jointly Administered
                            Debtors.

## DECISION ON MOTION BY WOODTRUST BANK TO ABSTAIN

Sparhawk LLC, Sparhawk Properties LLC, Sparhawk Trucking, Inc., and Sparhawk Truck and Trailer, Inc. ("Debtors"), each filed voluntary petitions under Chapter 11 of the Bankruptcy Code on March 13, 2026. A motion for joint administration was granted on March 15, 2026.

On March 25, WoodTrust Bank (the "Bank") moved for entry of an order abstaining from and dismissing these cases. Dkt. No. 41. Debtors object to the request.

The Court conducted four days of evidentiary hearings on this and related motions[2] by Debtors and the Bank. For the reasons and findings set forth herein, the Court denies the motion for abstention.

---

[1] Jointly administered with Sparhawk Properties LLC (Case No. 26-10528-11), Sparhawk Trucking, Inc. (Case No. 26-10529-11), and Sparhawk Truck and Trailer, Inc. (Case No. 26-10530-11). This caption applies to all four debtors.

[2] The Debtors filed motions seeking approval of the use of cash collateral and granting adequate protection. In addition, its motions sought to pay critical vendors. Dkt. Nos. 21, 54, and 57. The Bank's motion also included requests, in the alternative, for appointment of a Chapter 11 Trustee and to excuse turnover of property. Dkt. No. 41. These motions will be addressed in separate decisions.

## **FACTS**

Debtors operate a transportation and logistical business. Mark Sparhawk ("Sparhawk") is the manager of Debtors. Debtors had approximately 200 trucks and 1,000 trailers in 2023. Dkt. No. 62-18 at 4, ¶ 12.

That same year, the Debtors experienced a series of events that created mounting management and financial issues. Sparhawk experienced medical issues resulting in a 10-month absence from the business. Mechanical issues occurred with Peterbilt trucks. The mechanical issues resulted in repair costs, downtime, delays in delivery, and increased travel costs.

In January 2024, Debtors were sued related to a train derailment caused by one of their trucks. That accident involved the release of hazardous chemicals.

To address cash flow issues, Sparhawk approached the Bank to discuss the cash issue. The Bank agreed to a period of interest-only debt service. Working capital had been eroding, overdrafts had occurred, and both payroll and insurance payments were coming due.

When the cash flow problems continued, Sparhawk again met with the Bank. In June 2025, he was asked to sign a letter forbearance agreement. He did so, although no copy of such agreement was provided to the Court.

In the summer of 2025, the Bank suggested hiring a financial consultant. Sparhawk and a representative of the Bank interviewed three

consultants. Silverman Consulting ("Silverman") was hired. Trevek Sengbusch testified that Silverman's compensation was $15,000 per week.[3]

Then in August, Sparhawk was presented with a written Forbearance Agreement. Dkt. No. 53-1, Ex. 1. While it bears the date of August 10, it was not actually signed for several weeks. Jeff Meyers, the Bank's Senior Vice President and CFO, told Sparhawk it took longer to get the agreement and a mortgage drafted. But he said it would just be backdated. The back dating was also the date used on the Mortgage granting mortgages on three parcels that were not previously collateral of the Bank. Dkt. No. 118, Ex. 132. Two of those parcels were unencumbered. The Mortgage was notarized by Mr. Meyers stating it had been executed on August 10. *Id.* at 3.

Two amendments to the Forbearance Agreement were signed. Dkt. No. 53-2, Ex. 2; Dkt. No. 53-3, Ex. 3. The Second Amendment states it was "made as of the 14th day of November, 2025." Dkt. No. 53-3, Ex. 3. Sparhawk testified that was not the date it was signed. That date was a Friday. Sparhawk asked if he could have the opportunity to consider it and the demand that he sign an "Assignment for the Benefit of Creditors." *Id.* at 19. The Consent Resolutions of the Debtors confirm the date of November 21, 2025, as the actual date of the signatures on the documents. *Id.* at 15-17.

---

[3] Silverman was to identify and decide on what payments were "necessary" for the Debtors to pay based on the analysis Sengbusch was to provide to Debtors and the Bank. Silverman's compensation increased to $20,000 per week during the receivership.

The Second Amendment required that on or before November 21, 2025, Debtors were required to deliver to the Bank for approval an updated Restructuring Plan. Failure to do so or to timely sell assets, make payments, and provide capital infusings constituted termination events entitling the Bank to send a five-day notice of default. Thereafter the Bank was entitled to seek the appointment of a receiver under Chapter 128 of the Wisconsin Statutes. It selected Devon J. Eggert ("Eggert") to be the receiver.

On December 9, 2025, Eggert filed the Assignment for the Benefit of Creditors with the Wood County Circuit Court. Dkt. No. 105-4, Ex. 127. The same day, Eggert filed a Motion for Entry of an Order Authorizing Receiver to Enter Into Financing Agreement, Obtain Financing From the Lender, Release the Lender and Grant Additional Security Interests and Liens ("State Receiver Motion"). Dkt. No. 105-2, Ex. 125. The motion referred to a Financing Agreement, but it appears no such agreement was attached to the State Receiver Motion. Further, neither counsel for the Debtors nor the Bank were able to provide a copy to this Court or confirm whether or not a copy had been filed with the court in Wood County.

Accompanying the State Receiver Motion was a proposed Order. That Order was signed by Judge Nicholas J. Brazeau, Jr., on December 10, 2025, and filed the next day. Dkt. No. 105-3, Ex. 126, at 3. It ordered:

4

1.  *The terms and conditions of the Financing Agreement* executed by and between the Receiver and the Lender *are hereby authorized, approved and adopted and made the Order of this Court,* including, without limitation, the Receiver's agreement to grant Lender first priority mortgages, security interests and liens in substantially all assets of Sparhawk, including, without limitation, any claims arising under Chapters 128 and 242 of the Wisconsin Statutes.

    . . .

3.  This Order shall constitute an adjudication that *the obligations and the first priority properly perfected mortgage, security interest in and lien on the Collateral granted to the Lender, are not subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense, challenge, or claim of any kind.* This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Lender's security interests and liens without the necessity of filing or recording any financing statement, mortgage, notice of lien, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect the Lender's mortgage, security interest and lien, or to entitle the Lender to the priorities granted herein. Notwithstanding the foregoing, the Lender is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens, and other similar documents against the Receiver and Sparhawk to perfect or to otherwise evidence the Lender's security interest and lien, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the date of entry of this Order; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the Lender's security interest and liens. The Lender's security interests and liens shall be valid and enforceable against the successors and assigns of the Receiver, Sparhawk, *and any trustee or other estate representative appointed in any bankruptcy case.*

(Emphasis supplied.)

The notice sent to creditors included this Order. *Id.* at 1. It provided

eleven days to file objections or it would become a final order without further

action. The notice told recipients that if they wanted a copy of the actual

Financing Agreement, they needed to request a copy.

Eggert retained Silverman Consulting as his financial consultant. Their

compensation increased to $20,000. Dkt. No. 62-4, Ex. 104.  Silverman again

reviewed bills and recommended those to be paid to Eggert. Eggert determined

that no outstanding bills would be paid and the only payments would be the

"go forward" expenses. No cash advances were made by the receiver, although

cash collateral of the Bank was used to fund such payments.

A plan to scale down the operation had been prepared by Silverman

before the receivership. Dkt. No. 62-7, Ex. 108. It included estimated costs of

liquidation. Those costs included various professional fees:

- ➢ Silverman Consulting            $328,000
- ➢ Receiver Fees                   $220,000
- ➢ Legal Fees                      $149,000

**TOTAL**                            **$697,000**

### DISCUSSION

A. <u>Jurisdiction</u>

Federal district courts have "original and exclusive jurisdiction" over all

cases under title 11 of the United States Code. 28 U.S.C. § 1334(a). Federal

district courts also have "original but not exclusive jurisdiction" "of all civil

proceedings arising under the Bankruptcy Code, or arising in or related to

cases under the Bankruptcy Code." 28 U.S.C. § 1334(b). District courts may

refer these cases to the bankruptcy judges in their respective districts. 28

6

U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Western District of Wisconsin has referred all its bankruptcy cases to the Bankruptcy Court for the Western District of Wisconsin. W.D. Wis. Admin. Order 161 (July 12, 1984).

A bankruptcy court to whom a case has been referred may enter a final judgment on any "core" proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). This case is a core proceeding under 28 U.S.C. § 157(b)(1).

In addition, whether to abstain from hearing a case filed under chapter 11 of title 11 is a central function of bankruptcy courts. It includes the administration of the estate of a debtor and turnover of property.[4] 28 U.S.C. § 157(b)(2)(A) and (E). These cases also present obtaining credit and the potential for determinations of claims including the validity, extent or priority of liens, avoidance of liens, and determination of claims. Each of these matters are core proceedings under 28 U.S.C. § 157(b)(2).

B.  Permissive Abstention

The Court may abstain "from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11" in "the interest of justice, or in the interest of comity with State court or respect for State law . . . ." 28 U.S.C. § 1334(c)(1). This provision recognizes that bankruptcy courts have exclusive and nondelegable control over the administration of an estate,

---

[4] The Bank's Motion also seeks "excusal from turnover" of property of the estate under the control or in the possession of the Bank. Dkt. No. 41.

but in exercising that control "may, where the interests of the estate and the

parties will best be served, . . . consent to submission to State courts of

particular controversies involving unsettled questions of State . . . law and

arising in the course of bankruptcy administration." *Thompson v. Magnolia

Petroleum Co.*, 309 U.S. 478, 483, 60 S. Ct. 628, 84 L. Ed. 876 (1940).

Abstention under 28 U.S.C. § 1334(c)(1) is not mandatory. It merely grants

discretion to abstain if abstention is in the interest of justice or in the interest

of comity or respect for state law.

In deciding whether to abstain, courts in this circuit look to the following

factors:

(1)   the effect or lack thereof on the efficient administration of the estate;

(2)   the extent to which state law issues predominate over bankruptcy issues;

(3)   the difficult or unsettled nature of applicable law;

(4)   the presence of related proceedings commenced in state court or other non-bankruptcy proceedings;

(5)   any jurisdictional bases, other than 28 U.S.C. § 1334;

(6)   the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)   the substance rather than the form of an asserted core proceeding;

(8)   the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)   the burden of the bankruptcy court's docket;

8

(10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence in the proceeding of non-debtor parties.

*Ocwen Loan Servicing, LLC v. AIG Fed. Sav. Bank (In re Laddusire)*, 494 B.R. 383, 392 (Bankr. W.D. Wis. 2013) (citing *In re Chicago, M., St. P. & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993)). No one factor is dispositive. Section 1334(c)(1) is concerned with comity and respect for state law. *See In re Chicago, M., St. P. & Pac. R.R. Co.,* 6 F.3d at 1189. These considerations should be applied flexibly to the particular facts of each case. *In re Laddusire*, 494 B.R. at 392 (citations omitted).

A proceeding "arises under" the Bankruptcy Code if it depends on a right created or determined by a statutory provision of the Code. *Nelson v. Welch (In re Repository Techs., Inc.),* 601 F.3d 710, 719 (7th Cir. 2010). For example, a matter is within the court's "arising under" jurisdiction when it is based on rights explicitly provided in the Bankruptcy Code. *Napleton Enters., LLC v. Michael Bahary & Steven Bahary P'ship*, No. 15 C 3146, 2016 WL 792322, at *6, 2016 U.S. Dist. LEXIS 26253, at *17–18 (N.D. Ill. Mar. 1, 2016). A trustee's suit to recover avoidable transfers also arises under the Code. *See, e.g., Wilkins v. AmeriCorp Inc. (In re Allegro Law LLC),* 545 B.R. 675, 698 (Bankr. M.D. Ala. 2016) (counts of complaint for avoidance of preferences, post-petition transfers, and fraudulent transfers "invoke substantive rights created by the Bankruptcy Code and are thus 'arising under' proceedings").

9

The Court of Appeals for the Seventh Circuit has explained that "[c]ore proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law." *In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997). In other words, "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

By comparison, a proceeding is non-core if it "does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy." *Id.* Such a proceeding "may be related to the bankruptcy because of its potential effect, but . . . it is . . . [a] non-core proceeding." *Id.* Bankruptcy courts may determine whether a proceeding is core or non-core. 28 U.S.C. § 157(b)(3).

The receivership action did not arise under title 11, or in a case under title 11. It was commenced under state law. At the heart of the state court proceeding was the goal of the Bank to control the disposition of the assets of the Debtors.

Administering the assets of the estate are matters of bankruptcy law. Property of the estate invokes substantive rights under the Code.

10

Determination of what is property of the estate cannot exist outside of bankruptcy.

Both state law and the Code contain provisions related to

- preferences and fraudulent transfers; and

- distributions to creditors and classification of claims.

There are also cases on waivers and releases of claims under bankruptcy and state law. As a result, there are rights that could exist outside of bankruptcy. Still, those rights are related to these cases because of their potential effects on the cases. Even so, various rights in these cases invoke substantive rights created by federal bankruptcy law and thus are core.

**(1) The effect or lack thereof on the efficient administration of the estate if a court abstains**

Contrary to the Bank's position, there will be a disruption in the efficient administration of the bankruptcy estate if this Court abstains. As described, the Bank filed a receivership action in state court. On the same day, it filed the Financing Motion. Dkt. No. 105-2; Ex. 125.

That motion was not all that was filed on the first day. An Order authorizing the Financing Agreement, Releasing Claims, and Granting Liens and Security Interests was signed on December 10 and docketed on December 11. Dkt. No. 105-3, Ex. 126.

On December 19, Eggert sent a notice to creditors advising that a Financing Order was signed. *Id.*, at 1-2. It gave creditors until December 30 to object to the order and request a hearing. It did not include a copy of the Financing Agreement. Instead, if anyone wanted to see that document, they

11

were instructed to email a paralegal at Eggert's office who, in turn, would provide a copy to them. Otherwise, the Financing Order would become immediately effective and final.

As part of the receivership, the receiver agreed and asked the state court to (1) waive and relinquish any and all claims that might exist against the Bank; (2) grant first priority liens in substantially all of the property of the Debtors; and (3) include in the assets being assigned to the Bank any claims that might exist for preference or fraudulent conveyances. The proper and efficient administration of the estate, consideration of the interests of all creditors, and the preservation of any potential claims against the Bank can only be served in this Court.

Thus, factor 1 weighs in favor of denying abstention.

### (2) The extent to which state law issues predominate over bankruptcy issues

Next, factor two also weighs against abstention. The claims of the Bank are based on its transactions and agreements with the Debtors. The provisions of the Wisconsin assignment for the benefit of creditors statute exist outside of bankruptcy because it is a state statute. So too there are contracts or agreements between the Bank and Debtors based on state law.

Bankruptcy courts regularly interpret and apply state law. This is particularly the case when considering the amount of a claim, its secured status, and the terms of agreements between a debtor and creditor. So whether, for example, the Bank is secured and the nature and extent of that secured status is also a matter of decision under the Code.

12

This may become a central consideration under bankruptcy law if it may be asserted that certain of the interests of the Bank could be subject to an avoidance action. Additionally, the rights and interests of all the other creditors are factors where bankruptcy issues predominate over state law issues. And it does not appear state law issues predominate over the bankruptcy issues.

### (3) The difficulty or unsettled nature of the applicable law

The third factor weighs against abstention. The Wisconsin law issues governing their claims are not difficult to apply.

This Court is familiar with the provisions of both Chapters 128 and 242 of the Wisconsin Statutes. Chapter 128 has sometimes been referred to as a state court type of insolvency proceeding. The current Chapter 128 was established in 1937. It was modeled on selected provisions of the federal Bankruptcy Act of 1989, as amended through 1928.[5] There have only been nine revisions to chapter 128 since 1977.[6]

Failure to amend or update Chapter 128 has created potential problems. Many of the terms in that chapter are undefined. To determine the meaning, the state courts resort to federal case law under the Bankruptcy Act. *Capitol Indem. Corp. v. Hoppe (In re Bossell, Van Vechten & Chapman)*, 30 Wis. 2d 20, 26, 139 N.W.2d 639 (Wis. 1966).

The Bankruptcy Code replaced the Bankruptcy Act in 1978. Although provisions from the Code have not been incorporated into Chapter 128, lawyers

---

[5] Wis. Stat. §§ 128.19-20 (1925).

[6] The most recent amendments were in 1999.

13

now often propose and judges include orders and procedures that did not exist under the Act but are present under the Code. Because both the Code is federal bankruptcy law and the Act was as well, this Court is as well prepared and situated to make decisions on questions of law that could arise under Chapter 128 as a state court.

Chapter 242 governs fraudulent transfers or conveyances. It closely parallels provisions in the Code.[7] Claims for avoidance of such transactions, whether based on state law or bankruptcy law, can be addressed timely and with care and skill by this Court. The factual inquiry under both is substantially similar. The legal bases also closely parallel each other. At times the facts give rise to causes of action under both bankruptcy and state law.

The applicable state law is neither unsettled nor difficult to apply. Thus, factor three weighs against abstention.

**(4) The presence of a related proceeding started in state court or other non-bankruptcy court**

Factor four weighs against abstention. The state receivership proceeding has the focus of liquidating the Debtors by a receiver selected by the Bank. While there may be a few other secured creditors, the receiver obtained an order releasing any claims against the Bank and reconfirming and granting security interests to the Bank in all the assets of Debtors, including previously unencumbered assets. As a result, the primary beneficiary of a liquidation is

---

[7] 11 U.S.C. § 548.

the Bank. Minor benefits might flow to the few other secured creditors, but no benefit would go to unsecured creditors.

Any expenditures are reviewed by a consultant hired by the receiver. They must also, apparently, fall within a budget approved by the Bank. No provisions were included in the state proceeding for payment of any amounts owed to creditors on the date of the filing of the receivership.

While that is a related proceeding in state court, the existence of such a case alone is not sufficient to weigh in favor of abstention. This is particularly the case when that state court proceeding also included granting of interests in what appears to have been unencumbered property that would have been available for the estate and all creditors in the bankruptcy. This is further a concern because of the unlimited and complete waiver of possible claims against the Bank.

**(5) The jurisdictional basis, if any, of other than 28 U.S.C. § 1334**

Factor five also weighs in against abstention. There is independent jurisdiction. The Bank concedes there is bankruptcy jurisdiction. Its motion says this Court has jurisdiction over these cases and the motion under 28 U.S.C. § 1334(a) and (b). Additionally, that it involves administration of the estate. 28 U.S.C. § 157(b)(2)(A), (E), (F) and (K).

There are multiple federal questions over a number of issues that have already been presented and those that may arise as the cases proceed. Therefore, sections 157 and 1334 provide jurisdictional bases and this factor weighs in against abstention.

**(6) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case**

Factor six weighs against abstention. The issues directly affect proper administration of the estate and are integral to these cases.

It appears the Bank may be an undersecured secured creditor. The amount by which it is undersecured could change significantly if mortgages granted in connection with prepetition matters were to be set aside. If so, additional amounts would be available for unsecured creditors and expenses of administration.

**(7) The substance rather than form of an asserted "core" proceeding**

Factor seven weighs against abstention. As discussed *infra*, these cases include multiple questions of federal law:

- Use of cash collateral financing

- Possession and disposition of property of the estate that, at present, is located in Wisconsin, Texas, and various locations throughout the country

- Possible preferences and fraudulent transfers.

All of these are central to the administration of the estates of the Debtors. The substance is the protection and balancing of the estate and the interests of all parties in interest—creditors, equity holders, and any other party in interest.

**(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court**

Factor eight weighs against abstention. Severing any possible state law claims from the core bankruptcy matters is neither feasible nor practical. Such a fractured adjudication of claims would be inefficient and may lead to

16

inconsistent outcomes if it were even possible. Thus, factor eight weighs against abstention.

### (9)  The burden on the Court's docket

Factor nine also weighs against abstention. Abstention might delay proceedings in the main case. It would not address or protect the interests of other creditors. It may also increase the costs and fees of administration. This Court can timely adjudicate issues that may arise. This Court's docket is not so burdened that it cannot timely address this action.

### (10)  The likelihood that the commencement of the proceeding in a bankruptcy court involved forum-shopping by one of the parties

This factor does not support abstention. Nothing in the record suggests a finding that either party engaged in forum-shopping as that term is defined by the Seventh Circuit. *See, e.g., Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 709-10 (7th Cir. 2016).

Factors including issues with secured lenders contributed to the filing. Bankruptcy is a means of centralizing litigation in a single forum. Doing so often reduces cost, eliminates piecemeal litigation that may result in conflicting determinations, and aids in placing all similarly situated creditors on an equal footing.

### (11)   The existence of a right to a jury trial

Factor eleven weighs in against abstention. There is no right to a jury trial in connection with the state court proceeding or issues presented in this Court.

In Wisconsin, a jury trial is a right where "(1) the statute codifies an action known to the common law in 1848; and (2) the action was regarded as at law [i.e., rather than at equity] in 1848." *State v. Ameritech Corp.*, 185 Wis. 2d 686, 690, 517 N.W.2d 705 (Ct. App. 1994), *aff'd*, 193 Wis. 2d 150 (1995), 532 N.W.2d 449 (Wis. 1995). In *N.E. v. DHSS*, 122 Wis. 2d 198, 203, 361 N.W.2d 693, 696 (Wis. 1985), the Wisconsin Supreme Court held that a party has no constitutional right to a jury trial in a civil action created by statute that did not exist at common law when the Wisconsin Constitution was adopted.

### (12)   The presence in a proceeding of non-debtor parties

Factor twelve is inapplicable. There are no non-debtors or third parties who are not parties in interest involved in this case.

### <u>CONCLUSION</u>

In summary, the Court finds the factors overwhelmingly weigh against abstention. Accordingly, abstention under 28 U.S.C. § 1334(c)(1) is not warranted.

This decision constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: April 24, 2026

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge

18